IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| MELVIN EDWARDS, #774980 | § |
| | § |
| V. | §   CIVIL ACTION NO. G-03-449 |
| | § |
| EUCHARIA IWUNYANWU, ET AL. | § |

**OPINION AND ORDER**

Plaintiff Melvin Edwards brought this complaint pursuant to 42 U.S.C. § 1983 against Defendants Eucharia Iwunyanwu and Dirk Lorimier, alleging claims of unsafe working conditions and deliberate indifference to his serious medical needs. On April 4, 2005, all claims related to unsafe working conditions and against Dr. Iwunyanwu prior to June 21, 2001, were dismissed as time-barred, and all Eighth Amendment claims regarding Plaintiff's housing and work assignments were dismissed for failure to exhaust administrative remedies. On March 31, 2006, Defendants Iwunyanwu and Lorimier were ordered to answer as to Plaintiff's claim of deliberate indifference to serious medical needs subsequent to June 21, 2001. Now before the Court is Defendants' Motion for Summary Judgment, to which no response by Plaintiff has been filed. Having reviewed all relevant pleadings and summary judgment evidence, this Court makes the following findings.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party in a summary judgment action "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the pleadings, interrogatories, and admissions on file, together with the affidavit(s), if any, which are believed to demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes

this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Id*. at 325. This burden is not satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.* 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, the non-moving party must come forward with competent summary judgment evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Summary judgment may not be awarded by default, however, merely because the moving party has failed to respond. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the Court may not grant the motion, regardless of whether any response was filed." *Hetel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995)(citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). Nonetheless, the District Court may accept as undisputed the facts set forth in support of the unopposed Motion for Summary Judgment. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

Plaintiff alleges that Dr. Iwunyanwu acted with deliberate indifference to his serious medical needs when she failed to provide him with proper medical treatment for a knee injury that he suffered when he fell in the kitchen of the Ramsey II unit on April 4, 2001. He asserts that Iwunyanwu failed to instigate proper treatment for his knee in a timely manner, failed to ensure that prescribed treatment was effected, and only aided him in refilling his prescription requests. As a result of

Defendant Iwunyanwu's actions, Plaintiff claims that he suffers constant knee pain and is unable to fully use his knee or put weight on it.

As against Assistant Warden Lorimier, Plaintiff asserts that Lorimier denied several of his grievances regarding his dissatisfaction with his medical treatment. Plaintiff alleges that Lorimier was therefore aware of the problem and failed in his responsibility to ensure that the medical clinic at the Ramsey II unit provided him with proper medical care.

Defendants assert that there are no genuine issues of material fact for trial and move for dismissal pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Defendants maintain that even assuming Plaintiff's allegations were true, Plaintiff cannot overcome their entitlement to Eleventh Amendment and qualified immunity. *Id.*

Medical records show that Plaintiff first requested medical care for his knee two weeks after the injury. He was seen by Dr. Shelby who requested an x-ray, prescribed anti-inflammatory medication and referred him to the unit physician. The x-ray revealed swelling with no bony abnormalities. He was referred to the orthopedics department at UTMB and, on July 19, 2001, was diagnosed with a torn meniscus and possible torn patella tendon of the left knee. He underwent arthroscopic surgery of the left knee on August 17, 2001. Thereafter, Plaintiff received the following treatment:[1]

(1)  On August 29, 2001, CybR Care Primary Care Clinic visit, medication reviewed and ordered.

(2)  On September 20, 2001, Plaintiff was seen in UTMB Managed Care Clinic where pain medications were changed, crutch pass was extended and referral to UTMB ortho-clinic scheduled.

---

[1] *See* Defendants' Motion for Summary Judgment, Exhibits A and B.

(3)  On October 1, 2001, Plaintiff was seen in UTMB Managed Care Clinic and an exercise regime tailored to his specific physical limitations was explained to him.

(4)  On November 20, 2001, Plaintiff was seen in UTMB Managed Care Clinic and referred to UTMB orthopedic clinic.

(5)  On January 31, 2002, Plaintiff was seen by UTMB orthopedists and diagnosed with flexion contracture.

(6)  On February 4, 2002, x-ray at UTMB revealed early osteoporosis of left knee.

(7)  On February 25, 2002, Plaintiff was diagnosed with a deconditioned left knee with a flexion contracture by UTMB orthopedist.

(8)  On April 16, 2002, Plaintiff was again examined by orthopedists at UTMB for left knee flexion contracture.  On this date it is noted by Dr. Allen that "The patient failed to improve with extensive physical therapy...x-rays were consistent with left lower extremity disuse osteopenia and flexion contracture."

(9)  On April 16, 2002, Plaintiff underwent manipulation of the left knee under anesthesia to release the flexion contracture.  X-rays showed a disuse osteoporosis of the joint.  The importance of performing knee exercises three times a day was explained to Plaintiff and he was to receive physical therapy for six weeks.

(10)  On July 24, 2002, Plaintiff refused physical therapy.

Plaintiff filed numerous sick call requests between June, 2001 and June, 2003, requesting medication, appointments with UTMB orthopedists, special shower passes and cane and crutch re-authorizations.  Without exception, each sick call request was answered and/or granted.[2]  On at least

---

[2] *See* Defendants' Motion for Summary Judgment, Exhibit B.

4

seven occasions between the April, 2002 surgery and June21, 2003, Plaintiff was seen or examined at the UTMB orthopedic clinic or by orthopedists via cybertechnology. *Id.* Plaintiff has been medically unassigned since 2002.

*Eleventh Amendment Immunity*

Eleventh Amendment immunity bars a suit in federal court by a citizen of a state against his own state or against a state agency or department. *Hughes v. Savell,* 902 F.2d 376, 377-78 (5th Cir. 1990). Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state. *Warnock v. Pecos County. Tex.,* 88 F.3d 341, 342 (5th Cir. 1996). This immunity extends to suits for monetary damages against state officials in their official capacity. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001).

*Qualified Immunity*

The defense of qualified immunity protects Section 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The threshold issue in a qualified immunity analysis is whether an official's conduct violated a constitutional right, based upon the facts alleged and taken in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need inquire no further. *Id.* If, however, a constitutional violation occurred, the second inquiry is whether the official could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 206.

Plaintiff alleges that Defendants failed to properly treat or manage his knee injury. His right to medical care arises from the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105-10 (1976). To state a claim, Plaintiff must allege facts to show that he has suffered deliberate indifference to his serious medical needs. *Id*. at 105-10. An official acts with deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837-38. An official is deliberately indifferent if (1) he was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) he actually drew the inference; and (3) his response indicates the official subjectively intended that harm occur. *Thompson v. Upshur County, Tex.,* 245 F.3d 447, 58-59 (5th Cir. 2001). Though an inmate may disagree with his physician's choice or method of treatment, an allegation that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has specifically noted that in such situations the only remaining, logical possibility for liability is that the physician fiendishly and deliberately set out to injure rather than benefit the inmate. *Bass v. Sullivan*, 550 F.2d 229, 232, *cert. denied*, 434 U.S. 864 (1977). This clearly did not occur. Where there is undisputed evidence of sick calls, examinations, diagnoses and treatment, as in the instant case, a claim of deliberate indifference can be negated, even if the treatment proves ultimately to be unsuccessful. *Bass,* 550 F.2d at 232; *Jackson v. Cain,* 864 F.2d 1235, 1244 (5th Cir. 1989).

Moreover, neither negligence, neglect nor medical malpractice are sufficient to state a claim under 42 U.S.C. §1983. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)(quoting *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right. *Youngberg v. Romeo,* 457 U.S. 307, 322-23 (1982); *Estelle*, 429 U.S. at 107-08.

In this case, Plaintiff simply alleges no facts that would give rise to a claim that any Defendant acted with deliberate indifference to his serious medical needs. The Court has carefully examined the summary judgment evidence, including over 500 pages of medical records, and it is clear that Plaintiff received an abundance of medical care for his condition. Although he complains that he did not receive physical therapy for his knee, medical records indicate otherwise. Medical records also show that Plaintiff refused a scheduled physical therapy appointment. Moreover, the responsibility to rehabilitate his knee ultimately lay with the Plaintiff, who was instructed by his physicians to perform specific knee exercises three times a day.

With respect to Defendant Lorimier, Plaintiff has failed to show that Lorimier was personally involved in the harm for which he sues. If anything, Plaintiff has sued Lorimier because of his status as Assistant Warden.

In order to state a cause of action under Section 1983, a Plaintiff must identify Defendants who were personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). A Plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001).

The Fifth Circuit has noted that "supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause a constitutional deprivation; or (2) implement unconstitutional policies that causally result in Plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff has wholly failed to show either with respect to Defendant Lorimier. Therefore, to the extent Plaintiff is claiming that Lorimier is liable as a supervisor, he fails to state a claim upon which relief can be granted.

If Plaintiff is complaining that his grievances were improperly denied by Lorimier, he still fails to state a cognizable claim. An inmate does not have a constitutional entitlement to an adequate grievance procedure. *See e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996). Although it is a condition precedent to filing a suit arising under Section 1983, *see* 42 U.S.C. 1997e(a), any right to inmate grievance procedure is a procedural, not substantive right; thus, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Defendants assert that they are entitled to judgment as a matter of law as Plaintiff has failed to establish a constitutional claim against them and has failed to overcome their entitlement to qualified immunity. The summary judgment evidence corroborates their assertion.

Accordingly, for the aforementioned reasons, it is **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED**, with prejudice, for failure to state a claim for which relief can be granted.

This Order does not release Plaintiff or the Texas Department of Criminal Justice, Institutions Division from the obligation to pay the filing fee previously imposed. Plaintiff is advised that if he appeals this dismissal, he will be required to pay the appeal fee of $455.00 pursuant to the Prison

Litigation Reform Act, and he must submit a 6-month certificate of his inmate trust account when he files his notice of appeal.

A certified copy of this Order shall be mailed to: **TDCJ-Office of the General Counsel**, P.O. Box 13084, Austin, Texas, 78711; and, to **TDCJ Local Funds Division**, P.O. Box 629, Huntsville, TX  77342-0629.

**DONE** at Galveston, Texas, this the 29th day of September, 2006.

_____
Samuel B. Kent
United States District Judge